# MKC LAW GROUP

**WWW.MKCLAWGROUP.COM**
LAW OFFICES OF MICHAEL K. CHONG, LLC

| NEW YORK: | FORT LEE: | HOBOKEN: |
|---|---|---|
| 1250 BROADWAY, 36TH FL. STE. 300 | 2 EXECUTIVE DRIVE, STE. 720 | 300 HUDSON STREET. STE. 10 |
| NEW YORK, NEW YORK 10001 | FORT LEE, NEW JERSEY 07024 | HOBOKEN, NEW JERSEY 07024 |
| (212) 726-1104 | (201) 947-5200 | (201) 708-6675 |
| FAX (212) 726-3104 | FAX (201) 708-6676 | FAX (201) 708-6676 |

*\* Please Reply to: FORT LEE*

EMAIL: MKC@MKCLAWGROUP.COM

September 10, 2019

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007
**VIA ECF**

      Re: Mendez v. Chatham Parking Systems, Inc. et. al.
       Civil Action No. 17-cv-09316 (ALC-GWG)

Dear Judge Gorenstein:

  This joint letter is submitted on behalf of Plaintiff Jose M. Mendez, and Defendants Chatham Parking Systems, Inc. dba Chatham Parking Systems, Eleanor Kaplan and Stanley Kwong in the above-referenced action (collectively "Defendants", together with the Plaintiff the "Parties"). Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Parties seek approval of the enclosed Settlement Agreement, attached as Exhibit A, which provides for a total settlement amount of $70,00 (the "Settlement Sum").

## RELEVANT FACTS\PLAINTIFF'S CLAIMS

  Plaintiff Jose M. Mendez was employed as a parking garage attendant by Defendants Chatham Parking Systems Inc dba Chatham Parking Systems, Eleanor Kaplan and Stanley Kwong from 1998 until October 31, 2016. He then became employed by Defendant 170 Park Row Parking Corp. dba 170 Park Row Parking from November 1, 2016 until November 6, 2016, when he retired. Plaintiff contended that throughout his employment by all Defendants, he regularly worked six days per week and

in excess of 40 hours per week. Plaintiff contended that he was paid by payroll check for the first 40 hours per week at an hourly rate that exceeded the minimum wage, and that he was paid "off the books" for all hours worked per week in excess of 40 hours. Plaintiff contended that the hourly rate paid "off the books" for overtime hours was not equal to one and a half hours times his regular hourly rate. Defendants dispute these allegations and contend that Plaintiff was properly paid for every hour that he worked for Defendants.

Plaintiff was employed by the Chatham Parking Defendants until October 31, 2016, when Chatham Parking's lease of the garage facility expired, and the lease for the garage and its operation was leased to 170 Park Row Parking Corp. beginning November 1, 2016. Plaintiff Mendez was employed by 170 Park Row Parking Corp. from November 1, 2016 until his retirement in November of 2017.

## PROCEDURAL HISTORY

The Complaint was filed on November 30, 2017, as a collective action on behalf of Plaintiff Jose M. Mendez and individuals similarly situated. (DE 1). The Complaint pled claims under FLSA and NYLL for unpaid overtime compensation, as well as claims for spread of hours and record keeping violations. The parties participated in a mediation in July of 2018 which was unsuccessful in resolving the case.

The parties exchanged responses to written discovery requests. After Defendant 170 Park Row Parking produced in discovery records demonstrating that Plaintiff was compensated for all hours over 40 hours per week at one and a half times his regular hourly rate, A Stipulation and proposed Order of Partial Dismissal Without Prejudice as to Defendant 170 Park Row Parking Corp Only was filed on November 27, 2018 (DE 53). Based upon case law provided by defense counsel that the claims for spread of hours and record keeping violations were not cognizable claims, Plaintiff filed an Amended Complaint on November 26, 2018 (DE 52 ) which eliminated 170 Park Row Corp as a Defendant and eliminated the spread of hours and record keeping violations claims.

Plaintiff filed a Motion for Conditional Certification as a Collective Action on January 2, 2019 (DE

57, 57-1 and 58). The Chatham Park Defendants filed extensive opposition to the Motion (DE 64, 65, 66 and 67). Plaintiff filed a Reply to the opposition (DE 72). After oral argument on May 20, 2019, Magistrate Gorenstein denied the Motion for Conditional Certification. (DE 78).

A settlement conference was scheduled for August 6, 2019 (DE 85). Counsel engaged in settlement negotiations prior to the Settlement Conference and reached a settlement, which was reported to the Court on July 26, 2019 (DE 86).

## STRENGTHS AND WEAKENESSES OF PLAINTIFF'S CASE AND DEFENDANT'S DEFENSES

Plaintiff's claim for unpaid overtime compensation relied primarily on Plaintiff's anticipated testimony and recollection of the number of hours worked per week and the amount of compensation Plaintiff received by combination of payroll check and "off the books" compensation. Plaintiff had minimal documentation to support his claims of the number of hours worked and compensation paid to him. Plaintiff did not have any records reflecting the number of hours worked per week. He had only a handful of payroll checks issued by Chatham Parking, and did not have any documents related to off the books compensation paid.

Defendant filed in opposition to the Motion for Conditional Certification the Affidavit of Linda Kwong who became the bookkeeper for Chatham Parking in October of 2010. (DE 67). Previously, the payroll records were not computerized and were created and maintained by hand. Ms. Kwong created Excel spreadsheets which included employee's regular hourly wage rate and overtime wage rate for employees, such as Plaintiff Mendez, who were regularly scheduled for overtime, Ms. Kwong was responsible for calling the weekly payroll into ADP, Chatham Parking's payroll vendor

Ms. Kwong distinguished between employees who were employed by Chatham Parking prior to Ms. Kwong's employment as bookkeeper ("Pre-2011 Employees") and new employees hired after January 1, 2011 ("Post-2011 Employees"). Mr. Mendez was a Pre-2011 Employee. For Pre-2011 Employees, Ms. Kwong reported to ADP the employee's total weekly compensation, calculated as the regular hourly rate for the first 40 hours worked per week and time and a half compensation for employees, such as Plaintiff

Mendez, who were regularly scheduled for hours over 40. For the Pre-2011 Employees, the pay stubs did not provide a breakdown of regular and overtime hours worked; the pay stub would state the hours worked as zero. According to Ms. Kwong, the weekly total compensation paid to Mr. Mendez via payroll check consisted of compensation for 40 hours at his regular pay rate, and up to 20 hours at the time and a half overtime rate. (DE 67). Defendant's opposition to the Motion for Conditional Certification included producing payroll records for the years 2014 through 2016, and Excel spreadsheets for the years 2014 through 2016 (DE 65). Further, Defendant's raised in opposition that Mr. Mendez was a member of Teamsters Local Union 272, Parking Garage Employees' Union (DE 66), and provided a copy of the Collective Bargaining Agreement which addressed required compensation for Union employees (DE 65, Exhibit K).

Analysis of the records produced as Exhibits to Defendants' opposition by Plaintiff's counsel led to the conclusion that there was a substantial and material factual dispute concerning compensation paid to Plaintiff after October of 2010 after Ms. Kwong became the bookkeeper. Plaintiff's Counsel concluded that there was a substantial risk that the fact finder would reject Plaintiff's anticipated testimony, based largely on his recollection and without corroborating documentation, that he was compensated "off the books", at less than one and a half times his regular hourly rate, for overtime hours worked, after Ms. Kwong became the bookkeeper in October of 2010. Based on the extensive records Defendants provided in opposition to the Motion, there was a substantial risk that the fact finder would conclude that after October of 2010 (and thus, for the entirety of the three year look back period under FLSA, i.e., January 2014 until November 27, 2017), Plaintiff was compensated for up to 20 hours of scheduled overtime at one and a half times his regular hourly rate.

## DEFENDANTS' MONETARY EXPOSURE

Plaintiff's counsel had prepared a damages calculation for the mediation in July of 2018, which calculated the "best case scenario" of recoverable damages based on the information provided by Plaintiff. The analysis of the documents produced in opposition to the Motion for Conditional Certification led to Plaintiff's counsel preparing a revised "best case scenario" of damages recoverable by Plaintiff. A copy of

the calculation of Defendants' monetary exposure, provided as part of confidential settlement communications, is attached as Exhibit B. The "best case scenario" of Defendants' monetary exposure was calculated using Mr. Mendez' assertion that he regularly worked 65 hours per work week, rather than Ms. Kwong's assertion that he was compensated for regularly scheduled overtime hours of up to 20 overtime hours per week. Plaintiff's calculations are also based on the premise that Plaintiff would be entitled to a three year look back period, based on a determination that Defendants' violations were willful.

Plaintiff's calculation of Plaintiff's best case scenario Defendants' maximum monetary exposure resulted in the calculation of $39,052.59 for unpaid overtime; with 100% liquidated damages, the Plaintiffs' damages totaled $78,105.19. (Exhibit B). Plaintiff also added to the damages calculation the interest in the amount of $18,170.69 that would be recoverable under NYLL if the case was treed to verdict. These calculations yielded a best case scenario Defendants' maximum monetary exposure of $96, 275.88. [1] Deducting the $18,170.69 for interest under NYLL, which would only be recoverable if the case was tried to verdict, for purposes of a pre-trial settlement, Plaintiff's best case scenario of damages, exclusive of attorney's fees is **$78,105.19.**

Defendants dispute any liability with respect to the claims alleged by Plaintiff in the above-referenced matter, dispute Plaintiff's damage calculations, and dispute Plaintiff's calculation of Defendants' monetary exposure. However, given the potential expenses associated with continued litigation and defense of the claims against them, Defendants have decided it is in their best economic interest to settle this matter before further litigation costs are incurred.

## THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE

To determine whether an FLSA Settlement Agreement should be approved as fair and reasonable, courts in the Second Circuit consider the totality of the circumstances, including the following factors:

(1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will

---

[1] This figure is calculated after deducting from the calculations $4156.00 for spread of hours compensation, and $10,000 for record keeping violations, as these claims had been dropped in the Amended Complaint.

enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, No. 10 Civ. 7688 (JLC), 2013 WL 4427917, at *2 (S.D.N.Y. Aug. 20, 2013) (citation omitted).

**I.    The Settlement Agreement is Fair and Avoids Litigation Risks and The Financial Burden to Plaintiff of Continued Litigation**

The Settlement Agreement requires Defendants to pay Plaintiffs the Settlement Sum of $70,000 in one lump sum after court approval of the settlement. Thus, the settlement does not involve installment payments over time, as FLSA settlements often involve, and does not involve delayed receipt of the settlement compensation by Plaintiff. As Plaintiff is now retired and living on a limited, fixed income, there is a substantial benefit to the Plaintiff in receiving the settlement compensation now, rather than receiving compensation, if any, after a trial to verdict and possible appeals.

Moreover, continued litigation in the hope of achieving a greater monetary recovery would present a financial burden to Plaintiff. Plaintiff now resides in Oregon. A settlement conference had to be adjourned because despite substantial communication with Plaintiff about arranging transportation to attend the settlement conference, Plaintiff advised that he was unable to afford transportation to New York to attend the settlement conference. (DE 84). Had the litigation continued and not been settled, Plaintiff would have been required to incur the expense to travel to New York for his deposition, an expense that is not affordable for him. (DE 84, paragraph 13). A trial, which would have carried both he potential for Plaintiff to recover more than the settlement amount, and the substantial risk of no recovery or a recovery less than the settlement amount, would have required Plaintiff to incur the expense of traveling to and staying in New York for the

trial, an expense he cannot afford.

This settlement avoids additional litigation costs that inevitably accrue in proceeding with depositions and preparation for trial. The continued expenses of litigation, including transportation costs Plaintiff cannot afford to pay, and in light of the risk that the fact finder would discredit Plaintiff's testimony, and credit the extensive records relating to compensation paid that were produced by Defendants, thus risking no recovery or recovery less than the settlement amount, the Settlement Sum is fair and reasonable.

## II.  The Allocation for Attorneys' Fees and Costs is Reasonable

Plaintiff's counsel expended considerable time in analyzing records produced in discovery and in motion practice by both the Chatham Parking Defendants and 170 Park Row Corporation, preparation for participation in mediation, and preparing damages analysis spreadsheets for mediation, and a revised analysis of damages based on records produced by the Chatham Parking Defendants. Plaintiff's counsel has used his considerable expertise and experience in litigating FLSA\NYLL cases achieve a settlement satisfactory to Plaintiff. In accordance with the retainer agreement signed by Plaintiff, attorneys' fees are one-third of the total settlement amount after reimbursements of costs. Plaintiff's counsel incurred litigation costs totaling $1,249.42 as detailed on the attached Exhibit C. After deduction of litigation expenses, one third of $68,750.58 is $22,916.86 Thus, Plaintiff's counsel seeks attorney's fees and reimbursement of litigation expenses totaling $24,166.28.

The contingency fee in this case should be approved because it is the fee Plaintiff agreed to the contingency fee in the retainer agreements. *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."). Moreover, the one-third contingency is the fee which courts consider to be presumptively fair in FLSA cases. *See, e.g.*, *Marquez v. Roberto's Rest. Corp.*, No. 16 Civ. 2304 (HBP), 2017 WL 5468760, at *3 (S.D.N.Y. Nov. 13, 2017) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit."); *Ezpino v. CDL Underground Specialists, Inc.*, No. 14 Civ. 3173 (DRH) (SIL), 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) ("A one-third contingency fee is a commonly accepted fee in this Circuit.") (internal citations omitted); *Redzepagic v. Hammer*, No. 14 Civ. 9808 (ER),

2017 WL 1951865, at *2 (S.D.N.Y. May 8, 2017) ("One-third contingency fees . . . are commonly accepted in the Second Circuit in FLSA cases.").

Moreover, courts in this Circuit recognize the risk run by representing a Plaintiff on a contingency fee basis in assessing the reasonableness of an attorney's fee. *See Surdu v. Madison Glob., LLC*, No. 15-CIV-6567 (HBP), 2018 WL 1474379, at *11 (S.D.N.Y. Mar. 23, 2018) (noting that contingency-fee based work "clearly entitles [counsel] to some premium for the risk incurred"). Due to the risks and actions counsel has taken in this contingency fee case, and the fact that fees are limited to one-third of the net recovery, as per Plaintiffs' retainer agreements, Plaintiff's requested attorney's fees are reasonable and should be approved as fair.

### III.   The Agreement Satisfies All Other Factors Considered for Approval

The release contained in the Agreement is limited to Plaintiff's wage-and-hour claims. *Cohetero v. Stone & Tile, Inc.*, No. 16-CV-4420, 2017 WL 9989616, at *1 (E.D.N.Y. June 12, 2017) (recommending approval of release in FLSA settlement limited to wage-and-hour claims). Moreover, it contains no confidentiality provision. *See id.* (noting that agreement complied with *Cheeks* because it did not "impose a duty of confidentiality").

Chatham Parking no longer operates the parking garage where Plaintiff was employed, and Plaintiff is now retired. Plaintiff has no knowledge of any additional potential claims that he may have against Defendants, and it not possible that new claims will arise in the future by Plaintiff against the Chatham Parking Defendants. The proposed Settlement Agreement resolves *bona fide* disputes over contested issues, including, but not limited to, the number of overtime hours Plaintiffs worked and the compensation paid to him for overtime hours worked. . The settlement was reached following arm's-length negotiations between counsel both experienced in litigation of wage-and-hour law claims, and particularly FLSA\NYLL claims.

In sum, the settlement is fair and reasonable, providing Plaintiff with a substantial recovery protected against the uncertainties and costs of litigation, and should be approved by the Court.

We thank the Court for its time and consideration of this matter.

        Respectfully submitted,

        s/ Michael K. Chong

        Michael K. Chong

cc:  Counsel for Defendants (via ECF)